In re David C. GAUVIN, dba Le Geau Properties, Debtor.

David C. GAUVIN dba Le Geau Properties, Appellant,

v.

Jack L. WAGNER, Shirley L. Wagner, and American Properties, Ltd., Appellees.

BAP No. EC 82–1130 EHK.
BK No. 181–00019.
Adv. Nos. 181–0284, 181–0944 and 182–0011.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued July 16, 1982.
Decided Oct. 1, 1982.

Robert A. Julian, Murphy, Weir & Butler, San Francisco, Cal., for appellant.

Hilton A. Ryder, McGugin & Ryder, Fresno, Cal., Richard T. Ford, Fresno, Cal., for appellees.

Before ELLIOTT, HUGHES and KATZ, Bankruptcy Judges.

PER CURIAM:

The debtor appeals from an order granting relief from stay on the ground that the creditor's interest in the debtor's property was not adequately protected. 11 U.S.C. § 362(d)(1). We affirm.

The debtor relied entirely on an equity cushion in the subject 595.16 acres of raw land in Madera County. He offered no other form of adequate protection to plaintiffs.

■ Plaintiffs' appraiser opined that the highest and best use for the property was agricultural and based on a market value approach, valued the property at $1,636,690. The parties stipulated that the outstanding secured indebtedness to plaintiffs was $1,720,000. Thus, there is adequate evidence in the record to support the finding of the trial judge that there was no equity in the property.

The defendant did not provide an appraisal as such, but rather an economic analysis by a geologist offered to prove that the value of deposits of pumice in the grounds in an unprocessed state in a 188 acre portion of the larger parcel was $4,000,000. Defendant argues that the value of the land is $4,000,000 plus $1.2 million for the balance of the 470 acres as agricultural land (adopting plaintiff's appraiser's per acre value) for a total of $5,200,000.

The geologist testified that the highest and the best use for pumice (volcanic ash) was as pozzolan, used as a substitute for cement in mixing concrete.

Even though uncontradicted, the court below is not required to accept the valuation of debtor's geologist. The trial judge was justified in disregarding the geologist's valuation in view of the following facts shown in the record.

At least five different lessees have mined pumice from this property since 1940 without any degree of success. The present lessee had removed less than 5,000 tons since 1975. California Industrial Minerals, mining pumice on land adjacent to the subject property, is operating at about 50% capacity, producing approximately 40 tons a day or 1,200 tons a month.

Defendant's geologist testified that the subject property had proven reserves of pumice of 4,100,000 tons and probable reserves of an additional 4,000,000 tons. Assuming that all of the pumice was recoverable, the geologist testified that the 8,000,000 tons of pumice could be removed and processed over a period of ten years at 800,000 tons per year. It does not appear from the record that the geologist discounted his present valuation of the pumice for his estimate of recovery of the mineral over a ten year period.

We find it to be significant that the debtor did not explain where or how 66,000 tons of pumice per month would be marketed in view of the fact that the adjoining mine is operating at only 50% capacity and producing only 1,200 tons per month.

The finding of lack of adequate protection is not clearly erroneous.

Appellant also argues that the court placed the burden of proof on the issue of equity on the debtor, contrary to 11 U.S.C. § 362(g), which provides:

In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

We believe the debtor misreads § 362(g).

The issues referred to in § 362(g) are found in subsection (d). Subsection (d)(1) sets forth only one element (issue) for relief, namely, *cause.* It expressly states that *lack of adequate protection* is cause. Subsection (d)(2) sets forth two elements or issues; (A) lack of equity and (B) lack of necessity for effective reorganization.

■ It is therefore clear that § 362(g) puts the burden on the debtor in (d)(1) to prove absence of cause and in (d)(2)(B) to prove necessity to effect reorganization, and on the creditor in (d)(2)(B) to prove lack of equity.

It is also clear that the proceeding was tried on the (d)(1) issue of cause, more particularly lack of adequate protection. There can be no doubt that the debtor had the burden of proof on adequate protection.

■ Appellant in effect argues, however, that the burden of proof changes as to (d)(1) cause as soon as the debtor *says* he offers adequate protection in the form of equity. Note that we characterize the appellant's position as *saying* rather than *proving.* This is because the person who benefits from a burden of proof prevails on the issue of fact unless the party having the burden produces evidence. We find it difficult to believe that Congress intended in § 362(g) to shift the burden of proof in (d)(1) based upon the debtor's theory rather than his proof.

Rather, we read the reference in § 362(g) to be limited to the issue of equity expressed in § 362(d)(2)(B) and conclude that the debtor retains the burden of proving lack of cause under § 362(d)(1) even where the debtor asserts that equity furnishes adequate protection.

■ Finally, appellant argues that the trial judge erred in refusing to admit evidence of the debtor's prospects for rehabilitation. As to rehabilitation evidence, the court did have before it the debtor's unsigned and unfiled plan. But rehabilitation prospects are not relevant when a creditor is proceeding, as here, under (d)(1). Rehabilitation is one of two elements under (d)(2) but (d)(2) was not before the court.

AFFIRMED.